IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

ROBERT LEE TAYLOR,

              Plaintiff

VS.

OFFICER T. TAYLOR, *et al.,*

              Defendants

NO.  5: 03-CV-316 (CWH)

PROCEEDINGS UNDER 42 U.S.C. §1983
BEFORE THE U. S. MAGISTRATE JUDGE

# O R D E R

      Before the court are the plaintiff's MOTION FOR SUMMARY JUDGMENT (Tab #47) and the defendants' RESPONSE AND CROSS MOTION FOR SUMMARY JUDGMENT (Tab #50) which is supported by a brief (Tab #52) and a Statement of Undisputed Material Facts (Tab #51).  Also in the record is the deposition of the plaintiff which includes various exhibits (Tab #54) and the response of the plaintiff to the defendants' Cross Motion for Summary Judgment (Tab #56).

## LEGAL STANDARDS

      Rule 56 of the *Federal Rules of Civil Procedure* dealing with motions for summary judgment provides as follows:

> *The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party prior to the day of hearing may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.*

      Summary judgment can only be granted if there are no genuine issues of material fact and if the moving party is entitled to judgment as a matter of law. *Fed.R.Civ.P. 56(c); Warrior Tombigbee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir. 1983). While the evidence and all factual inferences therefrom must be viewed by the court in the light most favorable to the party opposing the motion, the party opposing the granting of the motion for summary judgment cannot rest on his pleadings to present an issue of fact but must make a response to the motion by filing affidavits, depositions, or otherwise in order to persuade the court that there are material facts present in the case which must be presented to a jury for resolution. *See Van T. Junkins & Assoc. v. U.S. Industries, Inc.*, 736 F.2d 656, 658 (11th Cir. 1984).

Specifically, the party seeking summary judgment bears the initial burden to demonstrate to the court the basis for its motion by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions which it believes show that there is an absence of any genuine issue of material fact. *Hairston v. The Gainesville Sun Publishing Co.*, 9 F.3d 913 (11th Cir.1998). In determining whether the moving party has met this burden, the court must review the evidence and all factual inferences drawn from this, in the light most favorable to the non-moving party. *Welch v. Celotex Corp.*, 951 F.2d 1235, 1237 (11th Cir. 1992).

If the moving party successfully meets this burden, the burden then shifts to the non-moving party to establish by going beyond the pleadings, that there are genuine issues of material fact to be resolved by a fact-finder. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). Genuine issues are those as to which the evidence is such that a reasonable jury could find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).[1]

In order to prevail on an excessive force claim pursuant to 42 U.S.C. §1983, a prisoner must allege that he was deprived of his Eighth Amendment right to be free of cruel and unusual punishment. The Eleventh Circuit has stated:

> [C]ourts must determine whether the evidence goes beyond a mere dispute over the reasonableness of a particular use of force or the existence of arguably superior alternatives. Unless it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain ... the case should not go to the jury. *Campbell v. Sikes,* 169 F. 3d 1353, 1375 (11th Cir. 1999), quoting *Whitley v. Albers*, 475 U.S. 312, 322 (emphasis omitted).

### FACTS

Though the defendants dispute the plaintiff's version of the facts, they have provided no alternative version through any sworn testimony.[2] Accordingly, the facts coming from the plaintiff are taken as true and are as follows:

---

[1] *See also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (the purpose of summary judgment is to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial); *Brown v. City of Clewiston*, 848 F.2d 1534, 1543 (11th Cir. 1988) (the question is whether the record as a whole could lead a rational trier of fact to find for the nonmovant).

[2] The defendants' Cross Motion for Summary Judgment cites to a response to a grievance filed on August 15, 2003 as proof that defendant David Taylor was not at the prison on the dates in question, but that document is not sworn under oath or even signed and cannot be used in considering the motions before the court.

On August 6, 2003, Defendant WALKER, a correctional officer at Georgia Diagnostic and Classification Prison, and another guard came into the dormitory where the plaintiff was being housed. After some chatter between the guards and the some of the inmates, the plaintiff got into an argument with Defendant WALKER, after which the defendants handcuffed him, punched him, and ran his head into beds on his way out of the dorm and finally ran his head into a wall causing him to lose consciousness.[3] The plaintiff submitted in his deposition that "they" did a number of things that *may* represent unnecessary force, but the only specific defendant he mentions as doing any individual act is Officer WALKER who is accused of hitting him in the head and chest. Pl. Depo. at 20.

The plaintiff complains that as a result of the defendants' actions, (1) his head and ears hurt and rang, (2) injuries to his shoulders and back were amplified, and (3) he chipped one of his teeth. When seen at medical after the incident, the plaintiff admitted that he had experienced headaches since roughly April of 2003 and shoulder pain since about October of 2002. Pl. Depo. at 50. The plaintiff did not mention his chipped tooth until he was seen at medical on August 11, 2003.

Prior to the confrontation on August 6, 2003 the plaintiff had received disciplinary reports for telling an officer to "kiss his ass" and for threatening to "shank" an officer.

- 3 -

---

[3] The plaintiff's grievance statement (Pl. Depo. Def. Ex. 3, p 7) – as read by the lawyer for the defendants at the plaintiff's deposition and agreed to in substance by the plaintiff – states that

> On August 6, 2003, at around 6:00 a.m., two female officers came into Dorm One. One of the officers had been in dorm night staff and the other was just coming in, CO II B.C. Walker. These two officers came in the dorm and stated, 'All of you get your asses up.' Officer Walker started going to bed to bed talking about inmates. She got into it with one of the inmates. She pushed him a number of times. By now, male officers came into the dorm. One of them was Officer T. Taylor. And while they was talking this inmate out the dorm, someone yelled out, 'That bitch is always starting shit.' Officer Walker turned around and said, 'All of you are bitches.' I told her she had me mixed up, because I was a man and not a bitch. God didn't make me a lady. Officer Walker came to me and called me a bitch a number of times. I asked her to stop. At that time, Officer Walker, along with Officer T. Taylor and the other two male officers, put handcuffs on me. After I was handcuffed, they punched me and ran me into the walls and beds. They pulled my arms and hands up behind my back until me feet was off the floor. When they got me out the dorm, they ran my head into the wall until I pass out and then was dragging me down the hallway.
> Pl. Dep. at 35

## DISCUSSION

### Qualified Immunity

"In this Circuit, the defense of qualified immunity is not available in cases alleging excessive force in violation of the Eighth Amendment because the use of force 'maliciously and sadistically to cause harm' is clearly established to be a violation of the Constitution by the Supreme Court." *Skrtich v. Thornton*, 280 F.3d 1295 (11th Cir. 2002). Accordingly, the defendants' reliance on qualified immunity is misplaced.

### Excessive Force

The benchmark case dealing with excessive force case in a prison environment is *Whitley v. Albers,* 475 U.S. 319 (1986) which holds that the factor which determines if an action constitutes excessive force is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Id.* at 321 (internal punctuation omitted). Later the Court expounded its holding:

> Many of the concerns underlying our holding in *Whitley* arise whenever guards use force to keep order. Whether the prison disturbance is a riot or a lesser disruption, corrections officers must balance the need to maintain or restore discipline through force against the risk of injury to inmates. Both situations may require prison officials to act quickly and decisively. Likewise, both implicate the principle that prison administrators . . . should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security. *Hudson v. McMillian* 503 U.S. 1, 6 (1992).

*Hudson* outlined five factors relevant in determining whether force used in a prison setting is excessive. These factors, adopted in the Eleventh Circuit, are as follows:

> (1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them. *Campbell v. Sikes,* 169 F.3d 1353, 1375 (11th Cir. 1999) (internal punctuation omitted).

In the case before the court, it is clear that the actions taken by the guards resulted in *de minimis* injuries, including aches and a chipped tooth. Plaintiff TAYLOR admits that he was being obstinate towards a guard, and affording the prison officials appropriate deference, they had a right to use force in order to preserve order and deal with any potential unrest that may have erupted as

a result of an inmate's talking back to an officer in a dorm full of prisoners. The third factor is where questions arise as to the *necessity* of the defendants using the amount of force they did employ. Punching the plaintiff, running his head into the beds of the dorm room, and causing him to lose consciousness after running his head into a wall once they got out of the dorm room (all while he was handcuffed) do not appear have a reasonable relationship to restoring order. There is no evidence that the defendant officers made any effort to temper the severity of their response; once the plaintiff was put in handcuffs, any threat to staff or inmates ceased.

As the facts are currently presented to the court, the defendants fail the test set forth in *Hudson*. Therefore, their CROSS-MOTION FOR SUMMARY JUDGMENT (Tab #50) is DENIED. However, since the plaintiff has not set out with specificity which defendants did which specific acts – some of which *may* have been excessive while others not – his Motion for Summary Judgment (Tab #47) must also DENIED.

**In light of the foregoing, the parties are directed to advise the court WITHIN FIFTEEN (15) DAYS of receipt of this order whether this case is ready for trial and, if not, why not.**

SO ORDERED, this 23rd day of JUNE, 2006.



CLAUDE W. HICKS, JR.
UNITED STATES MAGISTRATE JUDGE